UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRIA MOSLEY, et al., | Case No. 24-cv-03173-JST |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| WELLS FARGO & COMPANY, et al., | Re: ECF No. 23 |
| Defendants. | |

Before the Court is Defendants Wells Fargo & Company and Wells Fargo Bank N.A.'s (together, "Wells Fargo") motion to compel arbitration. ECF No. 23. The Court will grant Wells Fargo's motion to compel arbitration and stay this case pending completion of Plaintiffs' individual arbitrations with Wells Fargo.

## I.    BACKGROUND

Plaintiffs are 46 individuals residing in California who held accounts with Wells Fargo and allege violations of Regulation E of the Electronic Fund Transfer Act, 12 CFR 1005, *et seq.,* as well as California's Unfair Competition Law, Business and Professions Code section 17200, *et seq.* ECF No. 3 ¶¶ 1, 17–62, 128–44. Regulation E outlines specific requirements that financial institutions must follow before charging overdraft fees on one-time debit card and ATM transactions. Plaintiffs alleged that Wells Fargo violated Regulation E by assessing overdraft fees on one-time debit card and ATM transactions without first obtaining affirmative consent with a compliant opt-in disclosure agreement. [1] *Id.* ¶ 7.

---

[1] Plaintiffs alleged several other violations of Regulation E, but the Court will not recount those factual allegations for the purposes of this Order.

United States District Court
Northern District of California

**A.      Applicable Contract**

The parties do not dispute that Wells Fargo's Deposit Account Agreement ("Account Agreement") governs the terms and conditions of Plaintiffs' accounts and applies to Plaintiffs' causes of action.  The Account Agreement provides for mandatory individual arbitration of consumer claims administered according to the American Arbitration Association ("AAA") Consumer Arbitration Rules.  ECF No. 23-2 at 97 (stating that the AAA "will administer each arbitration and the selection of arbitrators according to the AAA's Consumer Arbitration Rules").  The "Applicable Rules" subsection of the Account Agreement further explains that the "Federal Arbitration Act (Title 9 of the United States Code) governs this Arbitration Agreement . . . ."  *Id.*

**B.      Procedural History[2]**

In 2022, Plaintiffs, along with thousands of persons across the country, filed individual arbitration demands with the AAA pursuant to their arbitration agreements with Wells Fargo.  ECF No. 3 ¶¶ 14, 80.  Plaintiffs brought largely the same claims as those asserted in this action.  *Id.*  After the AAA determined that it would administer these individually filed claims together under the AAA's Supplementary Rules for Multiple Case Filings, it began invoicing Wells Fargo for the administrative fees associated with the arbitration demands, pursuant to California Code of Civil Procedure ("CCP") sections 1281.97 and 1281.98.  ECF No. 23-2 at 426–27.  Wells Fargo paid each of these 2022 invoices on time.  ECF No. 23-2 at 452–54.  On October 27, 2022, the AAA granted Wells Fargo's request to require that the claimants provide more information about their claims and accounts.  ECF No. 23-3 at 368.  The AAA stated that the invoicing of fees for all applicable claims would be stayed until those claimants complied with its October 27 Order.  *Id.*  The claimants challenged the enforceability of the October 27 Order in federal court over the next year and a half, until the Ninth Circuit on March 7, 2024, affirmed the district court's decision to compel the claimants back to arbitration.  *See Mosley v. Wells Fargo & Co.*, No. 22-CV-01976-DMS-AGS, 2023 WL 3185790 (S.D. Cal. May 1, 2023), *aff'd*, No. 23-55478, 2024 WL 977674

---

[2] The parties have provided a lengthy and detailed recap of the procedural history involving arbitration and related federal court litigation.  The Court will summarize only the history relevant to Wells Fargo's late payment of arbitration fees and the AAA's closure of Plaintiffs' individual arbitration cases.

United States District Court
Northern District of California

(9th Cir. Mar. 7, 2024).

A week later, the AAA sent an email to Wells Fargo on March 13, 2024, attaching a letter and payment invoice for $465,000 for arbitrators assigned to 186 individual cases, including among them those filed by Plaintiffs.  ECF No. 23-6 at 156–57.  The letter stated: "As this arbitration is subject to California Code of Civil Procedure sections 1281.97 and 1281.98, payment must be paid by April 12, 2024 or the AAA may close this case.  Pursuant to California Code of Civil Procedure section 1281.98, the AAA cannot grant any extensions to this payment deadline unless all parties agree."  *Id.* at 156.

After engaging in some correspondence seeking clarification as to why it was being billed for arbitrator compensation at that point of the relevant fee schedule, Wells Fargo ultimately sent payment for the invoice.[3]  On April 17, 2024, the AAA confirmed Wells Fargo's payment but informed the parties that it did not *receive* the payment until after the April 12 deadline.  ECF No. 23-7 at 9.  The AAA explained, therefore, that pursuant to CCP section 1281.98, the claimants[4] listed in an attachment to its email—all of whom resided in California—should "review the relevant section of the statute and provide a response on how they wish to proceed."  ECF No. 23-7 at 9–11.  Notably, the AAA added that for the 186 cases implicated in its March 13 invoice, it would "be moving forward with arbitrator appointments on cases where CA CCP 1281.98 is not applicable."  ECF No. 23-7 at 9.

The AAA then stated on May 9, 2024, that absent party agreement by May 13, 2024, it would administratively close the California claimants' cases pursuant to Section 1291.98.  ECF No. 23-7 at 36.  The AAA further clarified that "pursuant to CCCP section 1281.97 and 1281.98, payment from the business must have been paid on or before April 12, 2024.  Pursuant to CCCP section 1281.98, the AAA cannot grant any extension to the payment deadline."  *Id.* at 35. On May 23, 2042, the AAA informed the parties that since it had not received any notice of party

---

[3] Wells Fargo asserts that it sent the payment on April 12 via electronic funds transfer.  ECF No. 23-1 ¶ 35.  Plaintiffs do not contest this, but they also explain that they have no way of verifying whether that payment took place.  ECF No. 34 at 7.

[4] The AAA's initial list included 18 affected claimants, but the AAA later corrected the list to include the 46 claimants who have filed this case.  *See* ECF No. 23-7 at 9–11, 35–36.

agreement, it had administratively closed the cases for the 46 individual California claimants. ECF No. 23-8. Five days later, Plaintiffs filed this lawsuit on behalf of those 46 claimants.

## II.    JURISDICTION

The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, 15 U.S.C. § 1693m, and 28 U.S.C. § 1367(a).

## III.    LEGAL BACKGROUND

### A.    Federal Arbitration Act

The Federal Arbitration Act ("FAA") generally applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration. *Id.* § 3.

If a valid arbitration agreement exists, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

### B.    California Arbitration Act

The California Arbitration Act ("CAA") likewise provides for the enforcement of agreements to arbitrate. Cal. Civ. Proc. Code § 1281 ("A written agreement to submit to

arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."). Of relevance here, the Act contains certain procedural provisions governing the payment of fees in an arbitration. Under section 1281.98 of the CAA, a drafting party must pay the fees or costs required to continue the arbitration proceeding within 30 days after the due date or it will be found in material breach of the arbitration agreement, which results in waiver of its right to compel proceeding with arbitration. Cal. Civ. Proc. Code § 1281.98(a)(1). Section 1281.97 largely parallels Section 1281.98, only Section 1281.97 instead concerns a failure to timely pay "the fees or costs to *initiate*" an arbitration proceeding. Cal. Civ. Proc. Code § 1281.97(a)(1) (emphasis added).

## IV.    DISCUSSION

The parties here do not dispute the validity of the arbitration provision in their Account Agreement. Instead, the parties dispute whether their cases were properly closed by the AAA or whether they should return to arbitration. Wells Fargo argues that the cases should return to arbitration because the FAA's procedural rules, rather than the CAA's procedural rules, should apply. Plaintiffs respond that the AAA properly applied the CAA's procedural rules because the Account Agreement incorporated those rules, and even if it did not, the AAA exercised its independent authority to close the cases under its own rules.

### A.    Whether CCP § 1281.98 Applied

The FAA generally "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). "When an agreement falls within the purview of the FAA, there is a 'strong default presumption . . . that the FAA, not state law, supplies the rules for arbitration.'" *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) (quoting *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002)). "To overcome that presumption, parties to an arbitration agreement must evidence a clear intent to incorporate state law rules for arbitration." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (internal citation omitted). A general choice-of-law clause in a contract is insufficient to overcome the presumption

United States District Court
Northern District of California

1    that the FAA governs.  *Johnson*, 614 F.3d at 1066.  "Even general references to California law in

2    an arbitration provision are, on their own, insufficient to overcome the presumption."  *Riley v.*

3    *QuantumScape Corp.*, No. 22-CV-03871-BLF, 2023 WL 1475092, at *4 (N.D. Cal. Feb. 2, 2023),

4    *aff'd*, No. 23-15277, 2024 WL 885034 (9th Cir. Mar. 1, 2024) (citing *Fid. Fed. Bank*, 386 F.3d at

5    1312).  Rather, "the parties must explicitly state their intent to incorporate California law *as it*

6    *relates to arbitration*."  *ValueSelling Assocs., LLC v. Temple*, No. 09–CV–1493–JM (MDD), 2011

7    WL 2532560 at *2 (S.D. Cal. June 23, 2011), *aff'd*, 520 F. App'x 593 (9th Cir. 2013).

8         Here, because Plaintiffs have not demonstrated a clear intent to adopt California procedural

9    rules for their individual arbitrations, the presumption that the FAA governs all procedural aspects

10   of the arbitrations at issue is not rebutted.  *See Frid v. First Republic Bank*, No. 12-CV-00806-

11   JST, 2014 WL 1365933, at *2 (N.D. Cal. Apr. 7, 2014).  Plaintiffs cite only to provisions of the

12   Account Agreement that reference "applicable [state] laws" on fees and expenses paid in

13   arbitration.  *See* ECF No. 30 at 16–17 (citing ECF No. 23-2 at 97).  The main provision cited

14   states that the "laws governing [Plaintiffs'] account[s] may limit the amount of fees and expenses

15   [they] are required to pay in arbitration."  ECF No. 23-2 at 97.  But general references to state law

16   in an arbitration provision do not alone overcome the presumption that the FAA's procedural rules

17   apply.  *See Riley*, 2023 WL 1475092, at *4–7 (finding that even a provision stating that the

18   arbitrator shall administer the arbitration "in accordance with California law, including the

19   California Code of Civil Procedure, and the administrator shall apply substantive and procedural

20   California law to any dispute or claim" is "not specific enough to overcome the presumption that

21   the FAA applies because the CAA is only a part of the CCP"); *see also ValueSelling Assocs.,*

22   *LLC v. Temple*, No. 09-CV-1493-JM MDD, 2011 WL 2532560, at *3 (S.D. Cal. June 23, 2011),

23   *aff'd*, 520 F. App'x 593 (9th Cir. 2013) (finding that federal procedural rules applied to an

24   arbitration where the arbitration clause stated that any dispute shall be submitted to arbitration and

25   "governed by the AAA Commercial Rules" and made no "explicit reference to the CAA or the

26   application of California law specifically in the context of arbitration").

27        The presumption that the FAA's rules apply is even stronger here because the Account

28   Agreement expressly states that any arbitration would be conducted according to FAA and AAA

United States District Court
Northern District of California

6

rules.  *See Sovak*, 280 F.3d at 1268, 1270 (applying state substantive law but federal procedural rules for arbitration where agreement provided that all disputes would be arbitrated "in Chicago pursuant to Illinois law and the rules of the American Arbitration Association"); *Fid. Fed. Bank*, 386 F.3d at 1312 (applying state substantive law but federal procedural law where an agreement provided that "[d]isputes or controversies shall be submitted to and resolved by binding arbitration in accordance with the laws of the State of California and the rules of the American Arbitration Association").

The two state court cases cited by Plaintiffs do not require finding that the CAA's procedural rules applied here.  Those cases stand only for the proposition that "the procedural provisions of the CAA apply in *California* [state] courts by default." *Valencia v. Smyth*, 185 Cal. App. 4th 153, 174, (2010) (explaining that previous California state court cases have recognized that the FAA's procedural provisions applied in *federal* court proceedings). Indeed, the *Mave Enterprises* case cited by Plaintiffs expressly acknowledges that "[b]y the same token, a federal district court will apply the procedural provisions of the FAA unless the parties expressly adopt the provisions of the CAA."  *Mave Enterprises, Inc. v. Travelers Indem. Co.*, 219 Cal. App. 4th 1408, 1430 (2013) (citing *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d at 1269).  Given that Plaintiffs chose to file this case in federal court, Plaintiffs have not rebutted the strong presumption that the FAA's procedural rules applied to their arbitrations.

Since all procedural aspects of the arbitrations at issue were governed by the FAA and not by California law, the AAA did not properly close the arbitrations by applying Sections 1281.97 and 1281.98.[5]

### B.    Whether the AAA Closed the Arbitrations Under its Own Rules

Plaintiffs argue that even if Section 1281.98 did not apply to their arbitrations, the AAA "closed these cases based on its own rules, which it can do without concern for federal law."  ECF

---

[5] Since the Court finds that Sections 1281.97 and 1281.98 do not apply to the arbitrations at all, the Court does not address Wells Fargo's remaining arguments regarding preemption or whether Section 1281.98 was properly triggered under these circumstances.  *See* ECF No. 23 at 18–22. Furthermore, given that Wells Fargo's payment was late only by a brief period, and Plaintiffs have not argued waiver, the Court need not reach whether and at what point a party's failure to pay could constitute waiver.

No. 30 at 13.  Plaintiffs rely heavily on *Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157, 1161 (N.D. Cal. 2023).  In *Lee*, the defendant failed to pay its portion of arbitration fees to the AAA until six days after the deadline.  *Id.* at 1159.  The AAA then informed the parties that under CCP Section 1281.97, the AAA could not grant extensions of the payment deadline and that it would close the case if fees were not paid by the deadline.  *Id.*  Despite finding that the FAA preempted application of section 1281.97, the court held that the AAA's rules and policies had independently "included the 30-day payment policy" based on section 1281.97 and thus properly terminated arbitration proceedings.  *Id.* at 1161.

The Court is not persuaded that *Lee*'s reasoning applies here because the AAA's communications and actions indicated that it relied solely on Section 1281.98—not its own rules or policies—to close Plaintiffs' individual arbitrations.  Consistent across its many correspondences, the AAA cited only CCP Section 1281.98 as the applicable provision governing the payment of fees for the California claimants.  *See, e.g.*, ECF No. 23-7 at 9 (April 17, 2024, email from the AAA to the parties explaining that "[p]ursuant to CA CCP 1281.98, AAA requests the [Plaintiffs] review the relevant section of the statute and provide a response on how they wish to proceed").  In its May 9, 2024, letter to the parties stating that it would close Plaintiffs' arbitrations unless the parties came to an agreement, the AAA reasoned that the "demands for 46 of the individual claimants included on the list of cases are subject to [Sections] 1281.97 and 1281.98," and "pursuant to CCCP section 1281.97 and 1281.98, payment from the business must have been paid on or before April 12, 2024." *Id.* at 35.  Critically, the AAA explained, "Pursuant to CCCP section 1281.98, the AAA *cannot* grant any extension to the payment deadline." *Id.* (emphasis added).  Far from choosing to independently adopt the strict 30-day payment deadline laid out in section 1281.98, the AAA interpreted the statute as limiting its discretion as to how it could administer the cases involving claimants in California.  Indeed, for the remainder of the 186 cases subject to the late invoice payment but which did not involve California residents, the AAA *did* apply its own discretion by allowing those cases to move forward.  ECF No. 23-7 at 9 (explaining that the AAA would "be moving forward with arbitrator appointments on cases where CA CCP 1281.98 is not applicable").  Accordingly, the Court finds that the AAA improperly

closed the cases pursuant to CCP section 1281.98.

## CONCLUSION

Accordingly, the Court grants Wells Fargo's motion to compel arbitration and stays these proceedings pending arbitration of Plaintiffs' individual claims. The Clerk shall administratively close the file. This order shall not be considered a dismissal or disposition of this action against any party. If further proceedings become necessary, any party may initiate them in the same manner as if this case had not been administratively closed.

**IT IS SO ORDERED.**

Dated:  November 14, 2024



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California